HASKELL LEMON CONSTRUCTION COMPANY, a corporation, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NUMBER 12 OF EDMOND, Oklahoma, and Bill Chitwood, Charles Suenram, Jeanne Cole, Bob Rudkin, and Mary Clyde Flesher, and George Rowley, and Vibra Whirl and Company, Inc., a corporation, Appellees.

No. 49646.

Supreme Court of Oklahoma.

Jan. 9, 1979.

LeRoy A. Powers, Oklahoma City, for appellant.

Robert T. Rice, Rice & West, Edmond, Leslie L. Conner, Jr., Oklahoma City, for appellees.

IRWIN, Justice:

Haskell Lemon Construction Company (appellant) commenced proceedings to recover $10,340.81 for materials furnished to a contractor on a public works contract let by Independent School District No. 12, Edmond, Oklahoma. School District, its superintendent, the individual members of its board, and Vibra Whirl (appellees) were joined as defendants. The trial court sustained the demurrers of the defendants and dismissed the action. Appellant appealed.

The allegations of appellant's petition are deemed admitted for the purposes of this appeal and stated most favorably for appellant are: School District awarded to McBride Paving Company a contract for the construction of an athletic track at Edmond High School. McBride failed to give and School District through its officers failed to require McBride to obtain a statutory payment bond. 61 O.S.1971, §§ 1 & 2 and 61 O.S.1974 Supp., § 113. Appellant furnished materials and supplies to McBride for the project. Before the project was completed, McBride sustained financial difficulties, did not complete the contract, and subsequently filed bankruptcy proceedings. The contract was abandoned by the trustee in bankruptcy as a burdensome asset of the debtor. Appellee Vibra Whirl was selected as the new contractor and it completed the project.

Appellant alleged that School District and the individual defendants concealed from it the fact no bond had been given. Demand was made for payment and assurances were made allegedly by School District's superintendent that appellant would be paid. Demand was also made for payment from funds on hand which had been earned by McBride under the contract but had not been paid to McBride.

The individual members of the school board were joined as defendants for willful

failure to comply with the statutory provisions requiring posting of the statutory bond. The superintendent of schools was joined as a defendant on the theory that he had, by his assurance that appellant would be paid for materials supplied, assumed personal liability for the debt. Vibra Whirl was joined as a defendant on the grounds that School District had paid funds to Vibra Whirl which had been earned by McBride prior to default and that appellant had equitable lien against the funds and Vibra Whirl held such funds as a constructive trustee.

The failure of the original contractor (McBride) to furnish and School District to require the statutory bond prescribed by 61 O.S.1971, § 1, constitutes the basis for appellant's action. Appellant admits that prior to the enactment of the Public Competitive Bidding Act of 1974 (61 O.S.1974 Supp., §§ 101–134) public agencies or officers were not liable for the failure to require the statutory bond, but contends that the 1974 enactment changed the public policy and that all the appellees "are liable for the failure to perform the duties imposed by the 1974 enactment, or by reason of their abuse and transgression of authority in connection therewith."

The general rules applicable to the statutory bond prescribed by 61 O.S.1971, §§ 1 & 2, are stated in *American Casualty Company v. Town of Shattuck*, 228 F.Supp. 834 (W.D.Okl.1964) [1] thusly:

"* * * these statutes were enacted by the Oklahoma legislature as a matter of public policy to afford protection to laborers and materialmen on public construction projects by giving them a payment bond to look to for their wages and materials since upon default of their contractor they have no contractual rights against the owner and no lien rights against the public land or improvements. *Hutchinson v. Krueger*, 34 Okl. 23, 124 P. 591, 41 L.R.A., N.S., 315 * * * ".

"* * * if the responsible public official[s] fail to heed the statute and take such a bond in conjunction with a contract for public construction, nevertheless, the unpaid or unsecured laborers and materialmen may not look to or collect from the public entity involved. *Frensley Bros. Lumber Company v. Scott*, 117 Okl. 133, 245 P. 615; *Electric Supply Company v. City of Muskogee*, 171 Okl. 130, 42 P.2d 140."

In *Clark v. Board of County Commissioners*, 62 Okl. 7, 161 P. 791 (1916), the Court said the statutory payment bond was for the protection of materialmen furnishing materials to public contractors, and to allow the county to make settlement with such contractor without becoming embarrassed by, or involved in, the multitude of small disputes which might arise between the contractor and his own creditors. The fundamental purpose of this statute is to save the public from all liability for liens for material and labor furnished on public improvements. *Lohr & Trapnell v. H. W. Johns-Manville Co.*, 77 Okl. 6, 185 P. 526 (1919). See also *Tulsa Boiler and Manufacturing Company v. Shaffer*, 72 Okl. 235, 180 P. 379 (1919); *Reinhart & Donovan Co. v. Board of County Commissioners of Choctaw County*, 70 Okl. 127, 173 P. 848 (1918); and *Bushnell v. Haynes*, 56 Okl. 592, 156 P. 343 (1916). Our Court has consistently held that one who furnishes materials to a contractor which are used for the construction of public projects is charged with knowledge of the statutory duty of the contractor to give a bond pursuant to 61 O.S.1971, §§ 1 & 2. If he furnishes such contractor materials before the bond is given, he does so at his peril, and if he sustains a loss he cannot recover damages from the public entity because the proximate cause of the loss is his own negligence in not ascertaining whether the statutory payment bond had been given. *Electric Supply Co. v. City of Muskogee*, 171 Okl. 130, 40 P.2d 140 (1935). It was on the basis of the foregoing authori-

---

**1.** For an extensive discussion of the statutory payment bond enactment and decisions interpreting the same, see Merrill and Klem, "American Casualty Company v. Town of Shat-

tuck—A Statutory Payment Bond Problem and Speculations Engendered Thereby." 20 Okl.L. Rev. 135 (1967).

ties that the trial court sustained appellees' various demurrers.

Appellant contends that § 103 of the Public Competitive Bidding Act of 1974 (61 O.S.1974 Supp., §§ 101–134) prohibits any work from being commenced on any public construction contract until a written contract is executed and all required bonds and insurance have been provided by the contractor to the awarding public agency. Appellant argues that prior to this enactment and the amendment of 61 O.S.1961, §§ 1 & 2 in 1968, no mandatory duty was imposed upon public officials to require the giving of the proper bond. Appellant contends that the Public Competitive Bidding Act imposes a mandatory ministerial duty on the public entity and its officers not to commence work until compliance has been demonstrated with the mandatory statutory payment bond requirements.

■ We have examined the Public Competitive Bidding Act and the 1968 amendment of 61 O.S.1961, §§ 1 & 2 (now 61 O.S.1971, §§ 1 & 2 which appellant also argues imposes an affirmative duty on public officials to obtain the statutory payment bond) and neither evidence a legislative intention of modifying our previous decisions or grant to materialmen and laborers greater rights than they previously enjoyed when they furnished materials and labor on a public works project. As noted by appellant, this Court in *Carpet City, Inc. v. Stillwater Municipal Hospital Authority,* Okl., 536 P.2d 335 (1975), held that the Public Competitive Bidding Act of 1974 is to be strictly followed and its' bond and insurance requirements could not be waived. While failure to strictly comply with the Public Competitive Bidding Act may result in certain adverse consequences for a public agency, there is not numbered among them liability for the losses of materialmen and laborers. Appellant's suggested application of *State Board of Affairs v. Principal Funding Corporation,* Okl., 542 P.2d 503 (1975), is not tenable for a number of reasons. Primarily, *Principal Funding Corporation,* supra, involved the enforcement of a contractual obligation with the state and in the case at bar the appellant had no contract with School District or any of the appellees but only with McBride. The situation might be significantly different had appellant contracted with School District to furnish the materials and supplies.

■ Appellant advances a separate but related theory on the issue of the individual liability of the members of the School Board. Appellant reasons that since under *Carpet City,* supra, the taking of a bond from McBride was a mandatory ministerial duty on the part of the Board members, and since the failure to secure the bond was a breach of this duty by the individual members which caused him to sustain his loss, he is entitled to recover damages from the Board members individually. The theory sounds in tort. As previously noted there was no contractual relationship between appellant and School District, much less between appellant and the individual members of the Board. Appellant states broadly that public officers are liable for the non-performance or negligent performance of mandatory ministerial duties and cites as support therefor a number of cases. *Lemons v. Shipman,* Okl.Ct.App., 541 P.2d 280 (1975); *Richards v. Tynes,* 149 Okl. 235, 300 P. 297 (1931); *Strong v. Day,* 61 Okl. 166, 160 P. 722 (1916); *Mott v. Hull,* 51 Okl. 602, 152 P. 92 (1915). In the *Tynes* case, supra, the rule was stated as follows:

"Where the law imposes upon a public officer the performance of ministerial duties in which a private individual has a special and direct interest, such officer will be liable to the individual for any injury which he may proximately sustain in consequence of the failure or the negligence of such officer, either to perform the duty at all, or to perform it properly."

The above authorities are clearly distinguishable from the decisions applicable where no statutory bond has been filed. In the cases relied upon by appellant, an affirmative duty was placed, by law, upon the public officer. The cause of action was based on the negligence or the misfeasance of the public officer, such negligence or misfeasance having been the proximate

cause of plaintiff's injury. In the cases involving failure to file a statutory bond, a laborer or materialman is charged with knowledge that a bond is required and if he performs labor or furnishes materials before such bond is given, he does so at his peril. If the laborer or materialman sustains a loss thereafter, he may not recover damages from the public agency because the proximate cause of the loss was his own negligence in not ascertaining whether a bond had been filed. See *Electric Supply Co. v. City of Muskogee,* supra.

The trial court did not err in sustaining the demurrer of the individual members of the School Board.

■■■ Appellant contends that the superintendent of School District, one of the individual appellees, personally assumed liability for the materials furnished because the superintendent gave appellant oral assurances that he would see to it that appellant would receive payment. Assuming the oral assurances would remove the liability shielding cloak from the superintendent, no personal obligation against him can be premised on the facts alleged. The superintendent had no authority to bind School District by his assurances as the School Board is the sole repository of such authority. 70 O.S.1971, § 1–117. Appellant specifically alleged the superintendent's assurances were oral promises to answer for the debt ·of another (McBride) which was unexecuted. Such oral promises or contracts are invalid unless reduced to .writing and subscribed by the party charged. 15 O.S.1971, § 136(2). Although the Statute of Frauds is normally affirmative defense to be pled and proved, where the application of the statute is demonstrated on the face of the petition, it may be raised by a general demurrer. *Fry v. Penn Mutual Life Insurance Co.,* 195 Okl. 507, 159 P.2d 550 (1945). The trial court did not err in sustaining the superintendent's demurrer.

Appellant's last contention is that Vibra Whirl, by contracting with the school board and receiving funds therefrom in which appellant had an equitable lien, became a constructive trustee to the extent of appel-

lant's lien on the funds. The funds involved are the funds which appellant alleges were earned by McBride prior to default and which had not yet been paid.

In *Stroud Oil Reclaiming Company v. Community Bank of Bristow, Okl.,* 475 P.2d 819 (1970), we held:

"Unpaid furnishers of labor or materials for the performance of a public contract have an equitable right in the funds due and owing the contractor but still in the possession of the public body and this right is prior and superior to the claims of the contractor's general creditors or assigns whether the statutory bond required to protect such laborers and materialmen has been given or not."

Appellant alleged that approximately $4,000.00 to $6,000.00 for "extra work" or "change orders" were still due McBride. 61 O.S.1977 Supp., § 113.1 of the Public Competitive Bidding Act specifically imposes a mandatory requirement that a certain percentage of all public improvement contracts, as in the case at bar, "shall be withheld as retainage." Also, 61 O.S.1971, § 16, provides for the withholding of payment to the contractor for the public work when a materialman or laborer has not been paid.

■■■ While it may be, by way of defense, that School District did comply with statutory provisions, or that there was no money due and owing McBride which was subsequently paid to Vibra Whirl, the record will not support sustention of a demurrer in favor of Vibra Whirl under either theory. Also, the record is insufficient to support a demurrer on the theory that appellant did not substantially comply with the notice provisions of the statutes. Whether School District did in fact have earned but undistributed funds in its hands and the amount thereof, if any, are matters to be resolved in future proceedings. And, if School District had some funds on hand that had been earned by McBride, but paid to Vibra Whirl, the issue would be presented whether Vibra Whirl held such funds as a constructive trustee. Appellant cites *Goldsby v. Juricek,* Okl., 403 P.2d 454

(1965), as supporting its contention that Vibra Whirl held such funds, if any, as a constructive trustee. In *Goldsby,* supra, we said that constructive trusts are such as are raised by equity against one who in any way against equity and good conscience has obtained and holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

Judgment affirmed in favor of all the appellees except Vibra Whirl. The order of the trial court sustaining the demurrer of Vibra Whirl and dismissing the action is reversed and the cause is remanded for further proceedings.

Justice Doolin having certified his disqualification did not participate.

LAVENDER, C. J., and WILLIAMS, HODGES, BARNES, SIMMS, HARGRAVE and OPALA, JJ., concur.